# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

VINCENT E. BOYD,

                        Petitioner,

v.

WARDEN SCOTT ECKSTEIN,

                        Respondent.

Case No. 18-CV-275-JPS

**ORDER**

Petitioner Vincent Boyd ("Boyd") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his Sixth Amendment rights to self-representation and to confront his witnesses were violated, and that his *nolo contendere* pleas were, consequentially, invalid. The parties have fully briefed their respective positions on Boyd's asserted grounds for relief. For the reasons explained below, the Court finds that Boyd's petition is without merit and therefore must be denied.

## 1.    STANDARD OF REVIEW

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is

that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies

general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal

habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

## 2.      BACKGROUND

In 2010, Boyd was charged with two counts of first-degree sexual assault of a child. He cycled through three attorneys before he was finally assigned to John Wallace ("Wallace") in 2012. At the final pretrial conference, Boyd sought a continuance and, when that was denied, tried to fire Wallace because he felt that Wallace was not adequately prepared for trial. Additionally, he felt that Wallace wanted him to enter a guilty plea.

Initially, the trial court would not allow Boyd to fire his attorney.[1] Petitioner then sought to represent himself. The Court allowed this, with the caveat that Wallace would remain as standby counsel. The contours of Wallace's role as standby counsel were defined in the following exchange:

> DEFENDANT: Can I just represent myself on this case then?

> COURT: Mr. Wallace is still going to be sitting there.

> MR. WALLACE: That would be fine with me.

> COURT: And you want to do your own openings and closings and all that?

---

[1] The trial court erroneously stated that the defendant could not fire his attorney. (Docket #12-22 at 7:12–13). This is incorrect; a defendant is not obligated to retain appointed counsel. *See Faretta v. California*, 422 U.S. 806, 807 (1975) (holding that a state may not constitutionally "hale a person into its criminal courts and there force a lawyer upon him."). The trial court rectified any prejudice this error might have caused, however, by subsequently allowing Boyd to proceed *pro se*.

DEFENDANT: I would like to completely represent myself on this case.

COURT: Okay, and Mr. Wallace will be at your side for standby counsel.

. . .

DEFENDANT: All right, and if I'm allowed to represent myself, can I have an opportunity to file the motions that I've asked be filed—

MR. WALLACE: We can take 'em—he can take 'em up chronologically a couple of 'em, we can do 'em, yes. I know exactly what he wants to do but—I can—I can assist him, so for the record, he has terminated me, he is proceeding pro se, and I have been appointed standby counsel. I will assist him in his defense, and I will advise him on what and what not to do.

COURT: Well, he hasn't fired you. You're standby counsel, but he has a right to represent himself.

(Docket #12-22 at 11–13).

The parties addressed further logistics, and the district attorney, "Ms. Paider," raised the issue of Boyd questioning the victims on the stand in light of his prior sexual assault convictions. The transcript reads, in relevant part:

MS. PAIDER: Well, Your Honor, then in terms of the - at least one of the other acts' victims, the **one from the Langlade County case**, the one he was convicted of, I know in some of his motions he is questioning that conviction and wants to have a trial within a trial. He's already pled and been sentenced. There's a Judgment of Conviction there. He can't dispute the fact that that's there, and technically, **because the charge is first-degree sexual assault of a child, the fact he has been convicted of it by law is allowed to come in,** so I just want him to be aware of that as well. **He's not going to be able to collaterally attack that conviction** at this trial -

(Defendant speaks but is inaudible.)

COURT: That's true.

COURT REPORTER: I didn't hear him.

DEFENDANT: **I have the right to defend myself against it. I would—I would like some latitude in questioning the victim** and I would talk to—

COURT: You will get no latitude.

MR. WALLACE: He's wishes—he's requesting some latitude in questioning—

COURT: You will get no latitude. You don't—just because you're representing yourself doesn't mean you get to violate the rules of evidence. I mean you get to – you're right, **you have a right to defend yourself within the law.** That doesn't mean just because you're representing yourself you—means you get to ask questions that aren't relevant, that are prejudicial, that are hearsay **You don't get to violate the rules of evidence just because you're representing yourself**.

DEFENDANT: No, I understand that. **I just think I should be able to tell the jury —**

COURT: If you don't—if you don't know what the rules are, maybe you should reconsider whether or not you want to represent yourself.

DEFENDANT**: I'm not allowed to explain to the jury why I pled guilty to the case?**

COURT: **You are not. You don't get to explain anything unless you testify.**

*Id.* at 14–16 (emphasis added).

The next day, Petitioner entered a no-contest plea. Wallace and Boyd appeared at the hearing, and the trial court began to review with Boyd his request to represent himself. At that point, Wallace interrupted the trial court and requested a moment to confer with Boyd. They spoke briefly, and then Wallace requested five minutes "to speak with the district attorney and discuss maybe a resolution." (Docket #12-23 at 3:12–14). The trial court

granted the request and, after conferring with the district attorney, Wallace provided the trial court with a summary of the plea agreement, which would be a *nolo contedere* plea with the removal of the "persistent repeater" status. The district attorney and Wallace discussed the potential implications of the plea on another case in another county, but the district attorney clarified that she had no power over the disposition of the case in the other county. *Id.* at 5:3–6. Following this exchange, the Court proceeded to conduct a plea colloquy to ensure that Boyd understood the plea and its consequences, and that the plea was made knowingly, intelligently, and voluntarily. Boyd responded in favor of all questions regarding the plea except for the following:

> COURT: Do you understand that. . .your plea[s] to the two counts of first-degree sexual assault of a child without the persistent repeater. . .are no contest?
>
> DEFENDANT: Yeah. I feel a lot of pressure, but yeah, I feel I don't really have any other option but to do that.
>
> COURT: Well, obviously, I understand how you feel pressure, and I just want you to understand that—or agree that I'm not pressuring you, you don't feel pressure from me, do—
>
> DEFENDANT: Pressure that I—since coming in yesterday, I feel pressured today.
>
> COURT: [Y]ou feel pressure based upon the rulings I made?
>
> DEFENDANT: Yes. I don't feel I'm going to be able to get a fair trial here.
>
> COURT: You don't—pardon me?
>
> DEFENDANT: I don't feel like I would be able to get a fair trial. I don't —and I didn't have—I don't know how to represent myself at trial.
>
> COURT: Well, you do.

DEFENDANT: No, sir, so I'm going to plead no contest.

COURT: You could have Mr. Wallace represent you. You understand that?

(Defendant nods head up and down.)

COURT: I mean you've had numerous attorneys, and as you said yesterday, you feel that you know this case better than anybody, but you've had an opportunity to—and obviously, this case has been going on a long time—you've had an opportunity to become familiar with this case and you've had attorneys working on this case; you understand?

DEFENDANT: Nothing's been done. I mean there's not a single motion that's been filed on my behalf.[2]

COURT: Sure there has been. We've had many motion hearings on this case. Do you understand also that by entering this plea you'd be giving up these rights: the right to a trial? You're giving up the right to have a trial here today; you understand that?

DEFENDANT: Yes, sir.

COURT: Do you understand you're giving up your right to remain silent? You're not remaining silent because you say —you're pleading no contest. Do you understand that?

DEFENDANT: Yes, sir.

. . .

COURT: Also, the fact you're giving up the right to confront your accusers, people who say you did this, ask them questions up here on the witness stand, and you're also giving up the right to have the State prove that you were guilty beyond a reasonable doubt. Do you understand you're waiving or giving up all those rights?

DEFENDANT: Yes, sir.

_____

[2]This assertion is belied by Ms. Paider's reference to "some of his motions" regarding another sexual assault conviction. (Docket #12-22 at 14:21–23).

. . .

> COURT: Okay. Has anyone made any promises or threats—other than the promise of the plea agreement—did anyone make any promises or threats to get you to enter a plea today?
>
> DEFENDANT: No, just a lot of pressure.

*Id.* at 6–9.

Prior to sentencing, Boyd moved to withdraw his pleas, claiming that he felt pressure by the trial court's refusal to adjourn the trial and his admonishment that he would receive "no latitude" in cross-examining witnesses. The trial court appointed yet another attorney to assist Boyd with the post-conviction relief process. This attorney also filed a motion to withdraw the pleas, claiming that the trial court had failed to conduct a hearing to determine whether Boyd had knowingly, intelligently, and voluntarily waived his right to counsel.

The trial court denied both post-conviction motions to withdraw the pleas, but on November 6, 2013 the Wisconsin Court of Appeals determined that the trial court had not conducted a hearing pursuant to *State v. Klessig*, 564 N.W.2d 716, 720 (Wis. Ct. App. 1997), which requires courts to determine whether a waiver of counsel is knowing and voluntary. Boyd's case was remanded for an evidentiary hearing to determine the validity of his waiver of counsel. (Docket #1-1 at 4). The trial court conducted the hearing and concluded that Boyd's waiver of counsel was valid. *Id.* at 9. At this hearing, the trial court commented that he would have provided Boyd with some latitude during the cross-examination. (Docket #15-1 at 12:18–23).

Boyd then appealed the trial court's conclusion, arguing that his right to self-representation was violated; that his waiver of counsel was not

voluntary and deliberate; that he was not competent to proceed without counsel; and that, under the totality of circumstance, he should be allowed to withdraw his pleas. (Docket #5 at 3). He explained that the trial court did not define standby counsel's role, or give Petitioner any input as to how standby counsel could be used. (Docket #1-1 at 10). He also argued that he was unrepresented in the plea negotiations, because he was not present for the conversation between his standby counsel and the district attorney. *Id.* at 12. He took issue with standby counsel's role in advising him, and opining to the court, that Boyd entered into the *nolo contendere* pleas knowingly, intelligently, and voluntarily. Finally, he contended that his decision to proceed by self-representation was involuntary because he was pressured into it by his attorney's lack of preparation and the trial court's refusal to continue the trial date. *Id.* at 14. The Wisconsin Court of Appeals evaluated each of these arguments, and concluded, based on the transcripts of the prior proceedings, that they were without merit. On June 12, 2015, the Wisconsin Supreme Court denied the petition for review. *Id.* at 18.

Petitioner then filed a post-conviction motion for relief with the trial court, seeking to withdraw his pleas on the basis that his trial counsel and post-conviction counsel were ineffective. Specifically, he claimed that trial counsel should have fought harder to allow him to withdraw his pleas in light of the Court's "no latitude" order, and his post-conviction counsel should have raised the deficiencies of his trial counsel in failing to argue for withdrawal of appeal. (Docket #5 at 3–4). On August 23, 2017, the Wisconsin Court of Appeals denied his appeal of the trial court's denial of post-conviction relief. (Docket #1-1 at 19). On December 12, 2017, the Wisconsin Supreme Court denied the petition for review. *Id.* at 22.

On March 21, 2018, this Court allowed Petitioner to proceed on two grounds for habeas corpus relief: "First, that his plea was not knowing, intelligent, and voluntary 'because of the events relating to standby counsel—including negotiating [the] plea agreement, signing [the] plea questionnaire, and opining that [the] plea was voluntary—violated Boyd's right to self-representation.'" (Docket #5 at 5) (citing (Docket #1 at 6–7)). Second, "that his plea was not knowing, intelligent, and voluntary 'because it was induced, in part, by the court's pre-trial ruling that Boyd would get no latitude during his cross-examination of the state's witnesses at the trial the next day." *Id.* (citing Docket #1 at 7–8). The parties' arguments regarding each ground will be analyzed below.

3. **ANALYSIS**

   3.1 **Validity of Boyd's Plea – Participation of Standby Counsel**

   A plea must be knowing, voluntary, and intelligent. *Parke v. Raley*, 506 U.S. 20, 29 (1992). Whether a plea was entered knowingly, intelligently, and voluntarily is determined from "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). Respondent does not dispute that a violation of the right to self-representation in the plea-bargaining process would entitle Boyd to a plea withdrawal. (Docket #19 at 13) (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Faretta*, 422 U.S. at 819–20; *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). The issue before the Wisconsin Court of Appeals was whether the participation of Wallace as standby counsel in the plea negotiation process infringed Boyd's right to self-representation. The Wisconsin Court of Appeals concluded that it did not. The issue before this Court is whether the Wisconsin Court of Appeals reasonably applied established Supreme Court precedent in reaching this conclusion.

The Supreme Court has held that it is unconstitutional for a state to "hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Faretta*, 422 U.S. at 807. Accordingly, "[t]he Sixth Amendment, when naturally read. . . implies a right of self-representation." *Id.* at 821. "[A]lthough he may conduct his own defense ultimately to his own detriment, his choice must be honored." *Id.* at 834. Nevertheless, the Supreme Court acknowledged that "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help." *Id.* at 834 n.46.

Nearly a decade later, the Supreme Court revisited the "stand-by counsel" concept in *McKaskle v. Wiggins*, 465 U.S. 168 (1984). There, the Supreme Court confirmed that standby counsel's unsolicited participation in a case could be appropriate in some circumstances. *Id.* at 176. The central inquiry was "whether the defendant had a fair chance to present his case in his own way." *Id.* at 177. In a pre-trial context, the right to self-representation could be "adequately vindicated. . .if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." *Id.* at 179.

In light of the aforementioned Supreme Court precedent, the Wisconsin Court of Appeals engaged in the following analysis to ultimately conclude that Wallace's appointment in the case, scope of involvement, and participation in the plea negotiation was appropriate:

> Boyd did not object to the appointment of Wallace as standby counsel. When the court told Boyd that Wallace was "still

going to be sitting there" even if Boyd represented himself, Boyd[3] replied, "That would be fine with me." Boyd asked questions about what he would and would not be permitted to do, and his questions were answered. He asked whether he would be permitted to file the motions that he had asked Wallace to prepare, and Wallace confirmed that he could assist Boyd with the motions. Boyd asked whether he, personally, would be permitted to question witnesses. The court confirmed that Boyd could question witnesses, but told him that he would be bound by the rules of evidence in terms of what testimony would be allowed.

We agree with the State that Boyd has not pointed to any applicable legal authority that would require the court to define the scope of representation of standby counsel. However, even if such a requirement existed, the record demonstrates that Boyd did ask for and receive guidance about the scope of what he would do and what Wallace would do. We are satisfied, based on the record before us, that the court did not deprive Boyd of his right to self-representation under *Faretta*, 422 U.S. at 807, by the manner in which it appointed Wallace as standby counsel.

*State v. Boyd*, 2014AP837, 2015 WL 789666, at *3 (Wis. Ct. App. Feb. 26, 2015).

Having concluded that Wallace's presence as standby counsel was constitutional and appropriately defined, the Wisconsin Court of Appeals assessed whether Wallace's conduct during the plea hearing violated Boyd's right to self-representation.

The transcript of the plea hearing shows that, at the beginning of the hearing, Wallace requested a moment to confer with Boyd, and that Boyd and Wallace conferred off the record. Immediately after his off-record discussion with Boyd, Wallace asked the court for five minutes to speak with the district attorney about a resolution. Upon conclusion of that discussion, Wallace and the district attorney informed the

---

[3]The parties clarify that Wallace was the one who said this, but the fact remains that Boyd did not object. *See* (Docket #12-22 at 11:25).

court of the terms of the plea agreement. The court then engaged Boyd in a plea colloquy, after which it found that Boyd's no contest plea was made freely, voluntarily, and intelligently, and accepted the plea.

The circuit court reaffirmed its finding that Boyd's plea was made freely, voluntarily, and intelligently at the hearing on his plea withdrawal motion. In making that finding, the court rejected Boyd's argument that he felt pressured by Wallace into entering the plea agreement. The court stated that Boyd "would not allow any attorney to push him around or make a decision for him. He's clearly exhibited throughout these proceedings that he is the one in charge...." Implicit in the court's finding that the plea was valid is the reasonable inference that Boyd authorized Wallace to engage in plea negotiations on his behalf. Given the facts in the record and the reasonable inferences to be drawn from them, we conclude that the circuit court did not erroneously exercise its discretion in finding that Boyd's plea was knowingly, voluntarily, and intelligently entered. *See State v. Lopez,* 173 Wis.2d 724, 729, 496 N.W.2d 617 (Ct.App.1992) (we will uphold the decision of the circuit court if it is supported by credible evidence or reasonable inferences that can be drawn from this evidence). . .[Finally,] Boyd has not demonstrated that Wallace's involvement as standby counsel prevented Boyd from having "actual control" over his own defense. *See McKaskle,* 465 U.S. at 178. Thus, we conclude that Boyd's right to self-representation was not violated by the appointment or use of standby counsel.

*Id.* at *4.

The Court is satisfied that the Wisconsin Court of Appeals reasonably applied Supreme Court precedent in its analysis of whether Boyd's right to self-representation was abridged or violated. Although standby counsel was appointed at the trial court's insistence, the record indicates that Wallace acted at Boyd's direction. Respondent further points out with regard to Boyd having control over his defense, that although

Boyd expressed feeling "pressure" to accept the *nolo contendere* pleas, he indicated that this pressure was from the trial court itself—not his standby counsel. (Docket #19 at 15) (citing (Docket #13-23:6–10)). On balance, the Court does not find that the Wisconsin Court of Appeals erred in its analysis of Wallace's conduct.

Boyd points to *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2005) to support his argument that his right to self-representation was violated when he was not included in the plea-bargaining conference. In *Frantz*, the Ninth Circuit held that a defendant who represented himself entirely throughout a case needed to affirmatively consent to stand-by counsel's solo participation in a chambers conference. *Id.* at 743. Additionally, the defendant was in lock-up during the conference, therefore implied consent could not be inferred by the failure to object. *Id.* at 744.

The Wisconsin Court of Appeals was not required to evaluate these circumstances under *Frantz*, a case from the Ninth Circuit, but even so, the Court finds that *Frantz* is distinguishable from the case at bar. Unlike the defendant in *Frantz*, Boyd did not have an established practice of representing himself. But the more salient difference between *Frantz* and this case is the fact that the plea negotiation between Wallace and Paider occurred immediately after an off the record discussion between Wallace and Boyd. (Docket #12-23 at 3:10–11). After this tête-à-tête with Boyd, Wallace sought recess to "discuss maybe a resolution." *Id.* at 3:13–14. Boyd was apparently aware that a plea negotiation would occur, and there is no evidence in the record that he was denied the opportunity to participate in the discussion. A brief recess occurred, after which Wallace apprised the Court of the plea deal. The Court launched into the plea colloquy, with which Boyd was cooperative. The concern motivating the requirement of

affirmative consent in *Frantz*—namely, that the defendant was in lock-up and unavailable to object—is simply not present here. To the contrary, the transcript supports the inference that Wallace spoke to Paider at Boyd's behest. The record does not suggest that Boyd was deprived of control over his defense, or even that Boyd wanted to be involved in the discussion. In sum, there is no basis for the Court to find that the Wisconsin Court of Appeals made an unreasonable finding of fact or erroneously applied precedential Supreme Court cases.

### 3.2    Validity of Boyd's Plea – Right to Confront Witness

At the outset, the Court must dispose of Respondent's contention that the claim is procedurally defaulted. (Docket #19 at 22–23). This Court cannot consider Boyd's habeas claim unless it has first been "fully and fairly presented. . .to the state appellate courts," thereby giving the courts a "meaningful opportunity to consider the substance of the claim[] that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); 28 U.S.C. § 2254(b)(1)(A). Fair presentment requires that the petitioner apprise the state courts of the constitutional nature of the claim, but it "does not require hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (citation omitted). The Seventh Circuit considers the following factors to determine whether the issue was adequately presented to the state judiciary:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and

4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001).

In his post-conviction relief motion, Boyd argued that his counsel was ineffective for failing to pursue withdrawal on the basis of the trial court's admonishment that Boyd would be afforded "no latitude" in his witness cross-examinations. Although brought in the context of a malpractice claim, the Sixth Amendment right to confrontation is inherent to the alleged misconduct. Indeed, the Wisconsin Court of Appeals directly addressed the issue of witness confrontation and latitude in its 2017 decision, albeit in the context of a malpractice claim. *State v. Boyd*, 2016AP1173, 2017 WL 3617014, at *3 (Wis. Ct. App. Aug. 23, 2017). ("Contrary to Boyd's assertion, the court was not infringing upon his constitutional right to cross-examine witnesses at trial."). The Court finds that Boyd fairly presented this claim to the state court in terms "so particular as to call to mind a specific constitutional right." *Anderson*, 471 F.3d at 815. Respondent's argument that Boyd defaulted on this argument is without merit.

Nevertheless, the Court finds that the Wisconsin Court of Appeals did not err in its determination that there was no violation of Boyd's Sixth Amendment right to confront his accusers. The Sixth Amendment provides defendants in a criminal case the right "to be confronted with the witnesses against him." U.S. Const. art. VI. This encompasses a right to probe "the believability of a witness and the truth of his testimony." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). However, this right is not absolute, and "trial judges retain wide latitude insofar as the Confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns

about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *State v. Rhodes*, 799 N.W.2d 850, 862–63 (Wis. 2011) (holding that a murder defendant's rights under the confrontation clause were not violated when the trial court imposed limitations on his cross-examination of his sister about prior incidents between her and the victim); *see also Alford v. United States*, 282 U.S. 687, 692 (1931) (requiring "reasonable latitude" be given to defense counsel on cross-examination and holding that failure to do so is a prejudicial error); *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999) (same).

In analyzing whether Boyd's Sixth Amendment rights were violated, the Wisconsin Court of Appeals explained that they were

> not persuaded that trial counsel was ineffective for failing to pursue plea withdrawal on the basis of the circuit court's "no latitude" ruling. Contrary to Boyd's assertion, **the court was not infringing upon his constitutional right to cross-examine witnesses at trial**. Rather, the record demonstrates that **the court was simply impressing upon Boyd the need to follow the rules of evidence while representing himself**. This meant that Boyd would get "no latitude" in asking questions that were irrelevant, prejudicial, or otherwise in violation of the rules. Thus, Boyd would not be allowed to conduct a "trial within a trial" and collaterally attack his prior conviction for sexual assault of a child. The court's ruling was proper and does not provide a basis for plea withdrawal.

*State v. Boyd*, 2017 WL 3617014, at *3 (emphasis added). The Court has reviewed the transcripts in light of the parties' arguments, and concludes that the state court did not make an unreasonable determination of the facts

or erroneously apply Supreme Court precedent to the question of whether Boyd's Sixth Amendment rights were not violated.

The relevant Supreme Court caselaw discussed above explains that trial courts retain considerable latitude in tailoring cross-examinations to be appropriate to the circumstances of the case. The transcript is by no means exemplary of an ideal exchange, but it does reflect that Boyd would be allowed to cross-examine the victim witness and to defend himself within the bounds of the law. However, the trial court made clear—using the term, "no latitude"—that Boyd would not be able to put his prior sexual assault conviction at issue unless he also elected to testify. The trial court further admonished Boyd that he would not be able to engage in dilatory conduct with a child witness whom he was alleged to have sexually assaulted. Finally, the trial court reminded Boyd that he would be bound to the rules of evidence in his line of questioning, and any testimony that Boyd elicited needed to be relevant, non-prejudicial, and admissible. It is clear, as the Wisconsin Court of Appeals concluded, that in this exchange, the term "latitude" describes a departure from the rules of evidence. The Wisconsin Court of Appeals correctly determined that there is nothing in this exchange that suggests that Boyd's right to confront and cross-examine his witness, or defend himself in the case, was compromised. The Court is not convinced that the trial court's extraneous on-record correction, two years later, of its understanding of the term "latitude" in the context of a cross-examination compels the conclusion that Boyd's plea was invalid.

The argument Boyd makes in his brief, regarding the line of questioning that he intended to pursue to impeach the state's witness, was never raised in the trial court. The record does not reflect that the trial court denied any motion that Boyd made on this issue. In that exchange, the trial

court simply told him that he would not be afforded latitude to stray from the rules of evidence. The fact that he was not permitted to flout those rules while he represented himself *pro se* does not render his *nolo contendere* pleas involuntary, and nor can it serve as the basis for a habeas petition.

**4.      CONCLUSION**

For the reasons stated above, the Court finds that Boyd's asserted grounds for relief are without merit. The Wisconsin state courts did not err in reaching their conclusions of law and fact regarding whether Boyd's Sixth Amendment rights were violated. The petition must, therefore, be denied.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Boyd must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

As the Court's discussion above makes clear, Boyd's petition, while rigorously argued, does not compel a grant of the Great Writ. When the record is considered as a whole, and when the *nolo contendere* pleas are evaluated under the totality of the circumstances and in light of established law, no reasonable jurists could debate whether they were involuntary. As a consequence, the Court is compelled to deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge